IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **GIACOMO AMARI** and **JONATHAN GHAHRAY**, <br><br> Plaintiffs, <br><br> v. <br><br> **CR ENGLAND, INC., et al.**, <br><br> Defendants. | Cause No. 1:07-cv-1616-WTL-TAB |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS C.R. ENGLAND, INC. AND KENNETH WILLIAMS'
MOTION TO STRIKE DR. ROBERT MARGOLIS'
<u>UNTIMELY EXPERT OPINION AND REPORT</u>**

On June 9, 2010, Defendants C.R. England and Kenneth Williams ("CR England") filed a motion to strike the May 12, 2010 supplemental report of Dr. Robert Margolis. The stated basis for the motion was that the deadline for expert discovery expired on February 19, 2010 and the discovery closed in this case on April 30, 2010. Defendants further claim the supplemental report is neither justified nor harmless. Dr. Margolis offers a new opinion in the second report that directly contradicts an opinion in his first report regarding plaintiff Jack Amari's hydromyelia being caused by the accident. (<u>See</u> CR England's memorandum in support of it motion to strike expert report at ¶6).

Defendant CR England's motion should be denied because the opinions set forth in Dr. Margolis' May 12, 2010 supplemental report were based primarily on plaintiff's medical treatment, reports and depositions of plaintiff's treating physicians after Dr. Margolis' original January 9, 2010 report was prepared. (Copies of Dr. Margolis'

January 9, 2010 and May 12, 2010 reports are attached hereto as Tabs 1 and 2). In particular, his May 12, 2010 report was based on a January 14, 2010 MRI of the cervical spine (a copy is attached hereto as Tab 3), a nerve conduction study conducted on February 4, 2010 by Dr. Richie (a copy is attached hereto as Tab 4), a February 10, 2010 letter report from plaintiff's expert radiologist, Dr. Bennett Greenspan (a copy is attached hereto as Tab 5), an April 12, 2010 report of Dr. Richie, plaintiff's treating neurologist (a copy is attached hereto as Tab 6), records from plaintiff's treating pain management doctor, Dr. Arthur Schurgin including records from January 25, 2010 through April 12, 2010, and the April 16, 2010 deposition of Dr. Schurgin (copies are attached on Tabs 7 and 8).

Moreover, contrary to defendants' claim of prejudice, they knew that the cause of plaintiff's syringomyelia / hydromyelia was at issue much earlier than Dr. Margolis' May 12, 2010 report.[1] In particular, (1) On February 12, 2010 they received the report of Dr. Greenspan, plaintiff's expert radiologist who opined contrary to Dr. Margolis' report that the syringomyelia was not congenital based on Dr. Greenspan's review of 4 MRI's done after the accident (a copy is attached as Tab 5); (2) On April 12, 2010 they received the report of plaintiff's treating neurologist Dr. Bunnie Richie who opined the syringomyelia was caused by the accident. (A copy is attached as Tab 6); (3) On April 16, 2010 they attended the deposition of Dr. Arthur Schurgin who also opined that the syringomyelia was caused by the accident. (See Dr. Schurgin's deposition at 14-18, attached as Tab 8). Finally, plaintiff's counsel when he e-mailed defendants' counsel

---

[1]The terms syringomyelia, hydromyelia and syrinx are synonyms

the supplemental report on May 14, 2010 offered defendants the opportunity to take Dr. Margolis' deposition and to name a rebuttal expert, which based on the motion they have apparently rejected. (See Tab 18).

## I.  Factual background

This is a truck accident case in which one of the plaintiffs, Giacomo Amari ("Jack Amari") has received and is still receiving medical treatment.

### A.  Scheduling order

Pursuant to the court's scheduling order, the court granted plaintiff until February 19, 2010 to identify experts with Rule 26 reports. (See Court's scheduling order). On January 15, 2010, plaintiffs served their Rule 26 disclosures identifying Dr. Robert Margolis as an expert witness and produced Dr. Margolis' January 9, 2010 report. Pursuant to the scheduling order, defendants had until April 4, 2010 to identify experts and serve reports and that all discovery was to be completed by April 30, 2010. (See Order granting plaintiffs' motion to amend the court's case management order).

### B.  Plaintiffs' counsel at various times provided defendants with updated medical records

Plaintiff Jack Amari has received continuing medical treatment since the November 5, 2005 truck accident and injury. Because of the continuing medical treatment additional information regarding his medical condition has been produced to defense counsel as well as plaintiff's neurologist expert. In particular, on April 6, 2010 plaintiff's counsel received an e-mail from defendant's counsel Greg Hubbard to provide any documents for the provider being deposed next week in Arizona, which have not previously been provided to us. (See April 6, 2010 e-mail from Greg Hubbard

attached at Tab 9).  At that time, the depositions that were being taken the week of April 13, 2010 were Dr. Joseph Cohen and Dr. Arthur Schurgin.  (Id.).  On April 7, 2010, plaintiff's counsel served on defendant's counsel additional medical records of Dr. Cohen (plaintiff's pain management doctor treating him for TMJ), Dr. Schurgin (plaintiff's pain management doctor treating him for back, neck and shoulder injuries), Dr. Parker (plaintiff's treating psychiatrist), Dr. Hecht (plaintiff's head and neck surgeon), and Dr. Fitzpatrick (plaintiff's treating neurosurgeon).  (See e-mail from plaintiff's counsel's paralegal Chrissy Miller to defendants' counsel attached at Tab 10).  On that same date, plaintiff's counsel's paralegal Chrissy Miller sent a check to Dr. Joseph Cohen's office so that updated records could be received prior to Dr. Cohen's April 15, 2010 deposition.  (Copies attached hereto at Tab 11).

On April 19, 2010, plaintiff's counsel and defendants' counsel had an e-mail exchange regarding the status of updated medical records.  On April 19, 2010, plaintiff's counsel wrote to defendants' counsel that "the problem is he is still treating and for example Dr. Richie's report is dated April 12th and we did Dr. Schurgin's deposition on April 16th.  The next depo we want to do is Dr. Parker, the psychiatrist.  He was not available in April and gave us a May 23, 2010 date.  This is the last non-expert depo we want to take.  We will send you records we have in the next week and will supplement them with new ones before the depo." (See e-mail from Jeffrey Lowe at Tab 12).  Defendants' counsel then discussed taking the deposition of defendant's expert Dr. Trexler on May 12, 2010, which it was after the discovery cut-off.  (Id.).

### C. Plaintiffs' counsel also sent updated records to Dr. Robert Margolis their previously disclosed expert witness

On April 19, 2010, plaintiff's counsel sent their retained expert, Dr. Robert Margolis updated medical records regarding Jack Amari and ask that he amend his report based on the enclosed records. (See Tab 13). On April 30, 2010, plaintiff's counsel sent Dr. Margolis the depositions of Dr. Schurgin regarding his recent treatment and the deposition of Dr. Cohen, the dentist who treated Mr. Amari for TMJ. (See Tab 14). On May 13, 2010, plaintiff received Dr. Margolis's revised report dated May 12, 2010. (See Tab 2). On May 14, 2010, plaintiff's counsel sent Dr. Margolis's amended report to defendants' counsel and informed defendants "let me know if you want to depose him. Also, I will consent to you naming a rebuttal expert since the change of his opinions were after the close of expert discovery based on the new treatment that Jack has received. Let me know what you want to do." (See May 14, 2010 e-mail from Jeffrey Lowe to defendants' counsel at Tab 15). After May 14, 2010, the first that plaintiff's counsel heard from defendants' counsel was the filing of the motion to strike Dr. Margolis's supplemental report on June 9, 2010, 26 days after the disclosure. [2]

---

[2]Following the disclosure of Dr. Margolis as an expert witness, defendants never sought to take his deposition. On March 3, 2010, plaintiffs' counsel wrote a letter to Mr. Langford and Mr. Gaston informing them that both Dr. Margolis and Dr. Greenspan were available to be deposed on reasonable notice, please let me know when you would like to take their depositions. (See March 3, 2010 letter attached as Tab 16). On April 19, 2010, plaintiffs followed up the March 3, 2010 letter again telling defendants that both Dr. Margolis and Dr. Greenspan were available to be deposed, no one has requested the deposition, and asked whether either of them wished to take Dr. Margolis' or Dr. Greenspan's deposition. (See April 19, 2010 letter attached as Tab 17).

Plaintiffs' counsel also informed defendants' counsel on April 16, 2010 at the deposition of Dr. Schurgin (plaintiff's treating pain management doctor), that Dr. Margolis is amending his report based on Dr. Greenspan's report and the updated medical records of Dr. Richie, Dr. Schurgin, and Dr. Parker. (Id.)

### D. The substance of Dr. Margolis' reports regarding the syringomyelia

On January 9, 2010, plaintiffs retained expert neurologist Dr. Robert Margolis prepared a report which contained his review of Jack Amari's medical records, his December 2009 examination of Jack Amari, and his opinions regarding Jack Amari's physical condition and the causation of Mr. Amari's medical problems. (See Tab 1, January 9, 2010 report of Dr. Robert Margolis at 1). One of the opinions that Dr. Margolis included in his January 9, 2010 report was that the syringomyelia hydromyelia that Jack Amari had was more likely than not congenital and not caused by the accident. (Id. at 9). [3]

Since the date of Dr. Margolis' January 9, 2010 report, Jack Amari has had additional medical treatment and imaging studies of and tests. The tests include a

---

[3] A syringomyelia refers to a disorder in which a cyst or cavity formed within the spinal cord. (See wikipedia definition of syringomyelia attached hereto as Tab 18 at ¶1). This cyst, called a syrinx, "can expand and elongate over time, destroying the spinal cord and eventually causing paralysis without the right procedures." (Id. at 1-2). There are two forms of syringomyelia, congenital and acquired. (Id. at 3). The acquired form of syringomyelia can occur "as a complication of trauma, meningitis, hemorrhage, tumor, or arachnoiditis. Here, the syrinx or cyst develops in a segment of the spinal cord damages by one of these conditions. The syrinx then starts to expand. Symptoms may appear months or even years after the initial injury, starting with pain, weakness, and sensory impairment originating at the site of the trauma. (Id.). The primary symptom of post-traumatic syringomyelia (often referred to using the abbreviation PTS) is pain, which may spread upward from the site of the injury. A typical cause of PTS would be a car accident or similar trauma involving a whiplash injury." (Id. at 4).

January 14 MRI of the cervical spine, a February 4, 2010 EMG and nerve conduction study by plaintiff's treating physician, Dr. Bunnie Richie.  Dr. Margolis also based his supplemental report on the April 12, 2010 report of Dr. Richie, plaintiff's treating neurologist.  It should be noted that Dr. Richie, in her April 12, 2010 report, believed that the thoracic hydrosyringmyelia was caused by the accident.  Dr. Richie deferred to Dr. Schurgin, the pain management doctor, as to whether that was causing pain.  (Id.).  On April 16, 2010, plaintiff's treating physician, Dr. Arthur Schurgin, was deposed and he testified that based on the additional MRIs, Dr. Richie's report, and other medical records, it was his opinion that the hydro syringe myelia was caused by the accident and that it was causing plaintiff pain.  (See Tab 8 at 14-18).

     Based on this additional information on May 12, 2010, Dr. Margolis prepared a supplement or updated report.  Dr. Margolis noted that all of his opinions in the prior report were unchanged with the exception of number 8 and that he now believes the thoracic hydromyelia with associated pain was caused by the accident.  (Dr. Margolis' May 12, 2010 report at 1).  This information is based on new information obtained after Dr. Margolis' January 9, 2010 report and consequently this is supplemental information that was not available, and it is based on additional medical treatment plaintiff obtained after the January 9, 2010 report of Dr. Margolis was prepared.

     On May 14, 2010, three months and 10 days prior to trial, plaintiff served by e-mail the supplemental report of Dr. Margolis and offered to let defendants depose Dr. Margolis and also informed defendants that "plaintiff would consent to defendants naming a rebuttal expert since the changes of his opinions were after the close of expert discovery based on new treatment that Mr. Amari received.  Let me know what

you want to do." (See Tab 15). Defendants never contacted plaintiff from May 14, 2010 through June 9, 2010 and instead of attempting to take Dr. Margolis' deposition, moved to exclude him claiming surprise.

> **II. Plaintiff's Supplemental Report of Dr. Robert Margolis is supplemental as defined Federal Rules of Civil Procedure 26 (e)**
>
>> **A. The Court should exercise discretion to allow Dr. Margolis to express the opinions in his May 12, 2010 report.**

Courts have vast discretion in supervising discovery and excluding evidence. Slgado by Salgado v. General Motors Corporation, 150 F.3rd 735, 739 (7th Cir.1998). See also Talbert v. City of Chicago, 236 F.R.D. 415, 422 (N.D. Ill. 2006). In addition, Rule 26 (a)(2)(C) provides that expert disclosures "shall be made at the times in the sequence directed by the Court. *Talbert*, 236 F.R.D. at 419. Furthermore, in the federal system, there is a preference that trials be determined on the merits. (Id.)

The policy behind Federal Rules of Civil Procedure 26 (e) is to supplement or to correct the disclosures upon information later acquired so as to not to sandbag one's opponents with claims and issues which should have been included in the experts' reports. In re: Ready-Mix Concrete Anti-Trust Litigation, 261 F.R.D. 154, 159 (S.D. Ind. 2009). The purpose of Fed. R. Civ. R. 26 (e) is to prevent surprise at trial. Talbert, 236 F.R.D. at 421. Moreover, Rule 26 (e) requires a party to supplement discovery when information disclosed is incomplete or incorrect and if additional or corrected information has not otherwise been known to the parties. Id.

      **B.     Plaintiffs did not attempt to surprise or sandbag defendants but to comply with Fed. R. Civ. P. 26 (e) and supplemental discovery when additional records became available**

In this case, plaintiff Jack Amari has continued medical treatment through the close of discovery. Based on the Court's prior Order, plaintiff timely disclosed Dr. Robert Margolis as an expert and produced his report. Since the date Dr. Margolis' disclosure was made, plaintiff Jack Amari has undergone additional medical treatment which caused Dr. Margolis to change one of his opinions. He changed his opinion in the supplemental report which was provided to defendants on May 14, 2010.

Defendants were made aware on April 16, 2010 of the fact that Dr. Margolis was going to prepare a supplemental report regarding the cause of the syringomyelia was consistent with the opinions regarding the cause of the syringomyelia which plaintiff's treating doctors, Dr. Richie and Dr. Schurgin after the report was prepared and disclosed, plaintiff's counsel offered to make Dr. Margolis available for a deposition at defendants' convenience, agreed to allow them to name a rebuttal expert witness, and defendants did not respond to the offer.

Moreover, there is no prejudice to defendants because the original scheduling order required plaintiff to produce expert reports by February 19, 2010 with defendants to identify experts and serve reports by April 4, 2010, which is approximately six weeks. Plaintiff's counsel is now offering defendants an additional six weeks from today's date, nine weeks from the date that Dr. Margolis' expert report was disclosed to identify their own expert with a report as long as the expert is produced two weeks prior to trial. As a result, defendants will suffer no prejudice and

they do not have a legitimate claim of surprise since this issue was known to them on April 16, 2010 approximately eight weeks ago. Consequently, plaintiff requests that the Court deny defendants' motion to strike and to grant plaintiff's motion to amend the scheduling order which was filed today.

                THE LOWE LAW FIRM

                By: /s/ Jeffrey J. Lowe
                    Jeffrey J. Lowe    #10538
                    Attorney for Plaintiff
                    8235 Forsyth, Suite 1100
                    Clayton, Missouri 63105
                    (314) 678-3400
                    (314) 678-3401 (facsimile)

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing has been served upon the following, electronically or by first class U.S. Mail, postage pre-paid, on June 14, 2010, to:

Mr. Robert T. Dassow
HOVDE DASSOW & DEETS, LLC
Meridian Tower, Suite 500
201 West 103rd Street
Indianapolis, IN 46290

Mr. Keith A. Gaston
Cruser Mitchell & Gaston
3077 E. 98th Street, Ste. 280
Indianapolis, IN 46280
      for defendants Crete and Isaacs

Mr. Michael B. Langford
Mr. Thomas E. Schulte
Scopelitis Garvin Light
  Hanson & Feary, PC
10 W. Market St., Suite 1500
Indianapolis, IN  46204
317-637-1777
317-687-2414 (fax)
      for defendants England and Williams

                \s\ Jeffrey J. Lowe